UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DANIEL ARTHUR MACKS,

      Plaintiff,

v.                                    Case No. 3:22cv1034-MCR-HTC

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 405(g), Plaintiff Daniel Arthur Macks seeks judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. ECF Doc. 1. Upon consideration of the administrative record and the memoranda of the parties, the undersigned recommends the decision of the Commissioner be AFFIRMED. Accordingly, Plaintiff's motion for summary judgment, ECF Doc. 16, should be DENIED.

## I.    BACKGROUND

Plaintiff, a retired aircraft mechanic who served over 20 years in the military, protectively filed a Title II application for DIB on July 23, 2020, alleging an onset

date of May 31, 2020, based on the following impairments: degenerative disc disease of the lumbar spine, arthritis of bilateral knees, carpal tunnel syndrome (post release surgery), shoulder arthritis, post-traumatic stress disorder ("PTSD"), major depressive disorder, general anxiety disorder, and obesity. Tr. 63, 176. Plaintiff was 46 years old at the time of the onset date. Tr. 176.

As will be discussed in more detail below, and as pertinent to the issues on appeal, Plaintiff complained to the Veterans Administration ("VA") about low back and bilateral knee pain in June 2020, and reported he has a history of low back pain that started in 2008. Tr. 294. X-rays of the knees and lumbar spine were taken in October 2020, which showed, for the right knee, "no fracture or dislocation. Physiologic joint fluid versus tiny joint effusion. No joint space loss or marginal osteophytes. No suspicious osseous lesions." Tr. 414. Views of the left knee revealed "no fracture or dislocation. Physiologic joint fluid versus tiny joint effusion. Mild medial compartment joint space loss with osteophytes." Tr. 414. Views of the lumbar spine showed "5 lumbar style vertebral bodies. Anatomic alignment. Short pedicles. Spurring vertebral bodies most pronounced L2 and L3. Facet degenerative change. No fracture. Mild L5-S1 disc space narrowing. Surrounding soft tissues unremarkable." Tr. 416.

A consultative examination completed by Dr. Reese in October 2020 showed "no objective evidence of physical limitation or disability" during the physical

examination.  Tr. 397.  Dr. Reese recommended pain management for Plaintiff's back pain, a possible release surgery for the carpal tunnel syndrome,[1] and a follow up with an orthopedist for the knee pain.  *Id.*

Plaintiff was referred to physical therapy and attended sessions for his back from December 2020 to January 2021, when he was discharged to home exercises with a "good" prognosis.  Tr. 634.  Plaintiff attended physical therapy sessions for his knee pain from April 2021 to May 2021, and was discharged because of subjective complaints of pain, despite objective improvements, and was given a "fair" prognosis.  Tr. 679.

Plaintiff's application for disability was initially denied on October 21, 2020, Tr. 103, and also denied on reconsideration on February 17, 2021, Tr. 114.  After an administrative hearing the Administrative Law Judge ("ALJ") issued a decision on October 27, 2021, denying benefits.  Tr. 15-31.  On December 2, 2021, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the final decision of the Commissioner.

## II.     ISSUES ON APPEAL

Plaintiff raises the following three (3) issues on appeal:

---

[1] Plaintiff reported improvement and no additional complaints regarding his carpal tunnel syndrome after the release surgery was performed in April 2021.  ECF Doc. 16 at 9.

A. The ALJ erred in his evaluation of Plaintiff's subjective complaints of disabling impairments.

B. The ALJ's finding that Plaintiff could remain on task with a sit/stand option is not supported by substantial evidence.

C. The ALJ failed to include all of Plaintiff's impairments in the hypothetical to the vocational expert by not implicitly accounting for his moderate limitations in concentration, persistence, and pace.

## III.    STANDARD OF REVIEW

This Court is not free to reweigh the evidence or substitute its judgment for that of the Commissioner, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984) (quoting *Jones v. Schweiker*, 551 F. Supp. 205 (D. Md. 1982)).

## IV.    THE ALJ'S FINDINGS

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as a disability, the physical or mental impairment must be so severe the

plaintiff is not only unable to do his previous work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]"  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a

disability claim in five (5) steps.  At step 1, the Commissioner determines if the

claimant is performing substantial gainful activity.  If he is, he is not disabled.  At

step 2, the Commissioner determines whether the claimant's impairments are severe.

If any impairment is severe, the Commissioner proceeds to step 3 to determine

whether any severe impairments have lasted or are expected to last for a continuous

period of at least 12 months, and if the impairments meet or medically equal the

criteria of any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  If they

do, the claimant is disabled.  If not, the Commissioner proceeds to step 4 to

determine if the claimant's impairments prevent him from performing his past

relevant work.  At this step, the Commissioner determines the claimant's RFC,

which is the most the claimant can do despite his impairments.  If the claimant cannot

perform past relevant work, the Commissioner proceeds to step 5 and determines

whether other jobs exist in significant numbers in the national economy that

accommodate the claimant's RFC and vocational factors.  If such jobs exist, he is not disabled.

Here, at step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 31, 2020, the alleged onset date.  Tr. 17.  At step 2, the ALJ determined Plaintiff suffers from the following severe impairments: mild degenerative disc disease of the lumbar spine, mild arthritis in the knee, carpal tunnel syndrome status post release surgery, shoulder arthritis, obesity, PTSD, major depressive disorder, and general anxiety disorder (20 CFR 404.1520(c)).  Tr. 17. Although the ALJ also found Plaintiff suffers from high cholesterol, obstructive sleep apnea, hypertension, and prediabetes, the ALJ determined those impairments were not severe.  *Id.*  At step 3, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 18.  However, the ALJ found Plaintiff was moderately limited in interacting with others and in concentrating, persisting, or maintaining pace.  Tr. 19.

At step 4, the ALJ determined Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can do no climbing of ladders ropes or scaffolding, but occasional climbing of ramps and stairs. The claimant can occasionally stoop, kneel, crouch, or crawl.  He is limited to frequent handling, fingering, and feeling.  He can perform occasional overhead reaching but can frequently reach in other directions.  He would need to have a

sit/stand option that would allow him to change positions at 30-minute intervals but can stay on task. He is limited to unskilled work that requires simple work decisions but can perform and follow detailed but uninvolved written or oral instructions. He can have occasional contact with the public and occasional interaction with coworkers. He is limited to work in the moderate (office type) noise level with no exposure to very loud noise." Tr. 20. Finally, based on that RFC and testimony from a vocational expert ("VE"), the ALJ determined Plaintiff was not disabled because he could work as a mail clerk, routing clerk, or price marker – jobs which exist in significant numbers in the national economy. Tr. 26.

## V.    DISCUSSION

### A.    The ALJ Did Not Err in Discrediting Plaintiff's Subjective Complaints of Pain.

The first issue Plaintiff raises on appeal is that the ALJ erred in discrediting his subjective complaints of pain based on a mischaracterization of Plaintiff's activities of daily living ("ADLs"). ECF Doc. 16 at 14. At the administrative hearing, Plaintiff testified he is limited in performing household chores, he is unable to walk for more than 15 or 20 minutes before needing to sit and rest due to low back and knee pain, he can sit for 30 minutes and stand for 15 minutes, and he can lift 30 pounds if needed but primarily lifts a 20-pound dog food bag. Tr. 40, 43, 46, 48. Upon review of the record, the undersigned finds no error.

To establish a disability based on testimony of pain and other symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); 20 C.F.R. § 404.1529(a); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  Once a medically determinable condition is identified, the ALJ must "evaluate the intensity, persistence and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect claimant's capacity for work." *Qualls v. Astrue*, 428 F. App'x 841, 845 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(1)).

"In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors." *Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019).  Factors the ALJ may consider in assessing a claimant's complaints include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms;

and (7) other factors concerning the claimant's functional limitations and restrictions. *Id.*; *see also Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 24, 2016).

If an ALJ discredits a claimant's allegations of pain, the ALJ must clearly articulate adequate reasons for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). The reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The court "will not disturb a clearly articulated" finding about subjective complaints "supported by substantial evidence." *Mitchell v. Comm'r., Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Contrary to Plaintiff's argument, a fair reading of the ALJ's decision shows he did not discredit Plaintiff's subjective symptoms based solely on the Plaintiff's ability to perform ADLs, although that was a factor the ALJ correctly considered.[2]

---

[2] Although "participation in everyday activities of short duration, such as housework or fishing" does not necessarily disqualify a claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441

Instead, as the ALJ explained, Plaintiff's statements about the intensity persistence, and limiting effects of his symptoms "are inconsistent with the medical evidence, as the objective findings in the case fail to provide strong support for the claimant's allegations of disability symptoms and limitations.  More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity."  Tr. 21.  After making those statements, the ALJ spends the next five (5) pages of the decision detailing those objective medical findings.

For example, the medical records show that in September 2020, Plaintiff had 5/5 normal muscle strength in his arms, 0/4 deep tendon reflexes, normal sensation in both arms, negative Tinel's and Phalen's signs, and his gait was also normal.  Tr. 383.  Also, imaging studies of Plaintiff's knee showed mild to moderate degenerative changes in the medial compartments of both knees and minimal spurring.  Tr. 388.  As the ALJ noted at the hearing, Plaintiff's testimony that "all the cartilage was gone," Tr. 44., and his knee "buckles," *id.*, are not supported by the objective radiology reports.  Similarly, Plaintiff testified he has to stretch out his back after sitting for 15-20 minutes, even though, as the ALJ noted at the hearing, "x-rays of

---

(11th Cir. 1997), the ALJ may consider a claimant's activities when making the credibility determination.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."); *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain.").

[Plaintiff]'s back don't show any kind of problem like that." Tr. 44. Instead, as discussed in the ALJ's decision, the October 2020 x-rays of Plaintiff's lumbar spine showed "diffuse degenerative disc disease most severe at L5-S1, anterior spurring diffusely at L2-L5; and diffuse degenerative changes through the lumbar spine." Tr. 22; Tr. 388.

The ALJ also discussed the October 16, 2020, consultative examination performed by Dr. Lance Reese. Tr. 390-398. Dr. Reese found Plaintiff to be "generally fit and quite muscular" with excellent mental status. Tr. 393. During testing, Plaintiff was able to pick up and manipulate items such as a coin, button, zipper, keys, and a pencil. Tr. 392. His extremities had no edema or muscle spasms. Tr. 394. His posture and gait were normal. Tr. 394. He was able to get on and off the examination table. *Id.* His appearance seemed normal with no obvious signs of dyspnea or fatigue. *Id.* He was able to walk without assistance from a device or person. *Id.* He was able to walk on heels, toes, tandem walk, and squat; bend at the waist; and had normal straight leg-raise both sitting and supine. *Id.* He had normal muscle strength, normal reflexes, and normal sensation. Tr. 395. He exhibited normal range of motion of the spine and extremities. Tr. 396. Thus, Dr. Reese concluded "[o]n physical exam, no objective evidence of physical limitation or disability." Tr. 397. Dr. Reese recommended Plaintiff follow up with pain management to treat his chronic back pain; follow up with orthopedics for possible

carpal tunnel release surgery; and follow up with an orthopedist to treat chronic knee pain from osteoarthritis. *Id.*

Plaintiff began physical therapy for his back in December 2020 and was discharged to home exercise in January 2021. Tr. 634. After the therapy on his back, Plaintiff reported a stronger core and lower extremity strength. *Id.* He was discharged to home exercises with a "good" prognosis. Tr. 634. He began physical therapy for his knee in April 2021. Tr. 636. After a few weeks of therapy, Plaintiff reported feeling better and demonstrated improved bilateral hip flexor and left knee extensor strength. Tr. 651. He also reported pain after driving 30 minutes and prolonged sitting. Tr. 646, 649. In early May, Plaintiff reported increased pain after running after his dog. Tr. 659. Plaintiff was discharged from therapy on May 28, 2021, and the discharge notes show Plaintiff's prognosis was "fair" and that even though he had "made fair objective improvement," his subjective symptoms were limiting his ability to progress. Tr. 679.

As he was required to do, the ALJ considered all of the medical evidence in discrediting Plaintiff's subjective symptoms of pain. The ALJ further articulated specific reasons for doing so, which as discussed above, was not limited solely to Plaintiff's ADLs. Thus, the undersigned finds Plaintiff is not entitled to relief on this first ground on appeal. *See e.g., Mitchell v. Comm'r, SSA*, 771 F.3d 780, 782

(11th Cir. 2014) (stating "we will not disturb a clearly articulated credibility finding supported by substantial evidence").

> B.   <u>The ALJ Did Not Err in Including in the RFC Determination that Plaintiff Could Stay On-task With a Sit/Stand Option</u>.

The ALJ's RFC determination included a sit/stand option. Plaintiff contends the ALJ erred in determining Plaintiff could remain on task while taking advantage of the sit/stand option because Plaintiff testified he needed to stretch his back between sitting and standing. Tr. 45. The Court finds no error in the ALJ's determination.

As discussed above, the ALJ determined the medical evidence did not support Plaintiff's subjective limitations. Tr. 44. At the hearing, the ALJ specifically told Plaintiff the x-rays do not support anything more than a mild problem with Plaintiff's back. Tr. 45. Although Plaintiff testified he was told he had a compressed disc, the ALJ pointed out that such an issue "does not show up on any of the X-rays." Tr. 45. Moreover, "[t]he burden is on plaintiff to demonstrate he suffers from a particular limitation and he has not directed the Court to any evidence showing that he suffers from those additional limitations." *Glacken v. Berryhill*, 382 F. Supp. 3d 116, 123 (D. Mass. 2019). Plaintiff does not point to any evidence in the record to support his position he will be off-task when transitioning from sitting to standing or at what percentage Plaintiff would be off-task. There is also no evidence to show the time needed for the Plaintiff to "stretch" his back could not be accommodated by normal

breaks. "Unlike under step 5 where the burden shifts to the Commissioner, however, absent *some* showing that the evidence of record supports more off-task time, plaintiff has not shown that the ALJ erred." *Bubb v. Kijakazi,* 2021 WL 6049072, at *5 (W.D. Wis. Dec. 21, 2021).

C.   <u>The ALJ Did Not Err in Failing to Account for Plaintiff's Moderate Limitations in Concentration, Persistence, And Pace in the Hypothetical to the VE.</u>

The ALJ determined Plaintiff was moderately limited in the area of concentrating, persistence, and maintaining pace. Tr. 19. The ALJ included the following limitation in the hypothetical to the VE: Plaintiff "would be limited to unskilled work that requires just simple work decisions but would allow an individual to do detailed but uninvolved written or oral instructions." Tr. 56-57. Relying on *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959 (11th Cir. 2020), Plaintiff claims that limitation is insufficient. The Commissioner argues *Richter* is inapposite because the medical evidence shows Plaintiff has the ability to perform unskilled, simple tasks despite concentration deficiencies. The undersigned agrees.

In *Richter*, a panel of the Eleventh Circuit in an unpublished opinion first noted the "circuit court has never addressed the question of whether a hypothetical question must specifically account for documented limitations of "concentration, persistence, or pace," and then looked to other circuits to conclude that "restricting the vocational expert's inquiry to simple, routine tasks or unskilled work" is not

sufficient.  *Id.* at 960.  The following year, a different panel of the Eleventh Circuit in an unpublished opinion, clarified that "an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) (citing *Winschel,* 631 F.3d at 1181 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.")).

Here, the record shows despite Plaintiff's limitations, he "can perform unskilled work that requires simple decisions" and "can perform and follow detailed but uninvolved written or oral instructions."  Tr. 20.  First, in Plaintiff's Function Report, he acknowledged an ability to pay bills, count change, handle a savings account and use a checkbook/money order.[3]  Tr. 232.  Plaintiff shops once a week for 30 minutes to an hour.  *Id.*  Plaintiff is able to drive long distances without complaints about concentration or focus.[4]  Tr. 23.  His counseling records show he

---

[3] Although Plaintiff testified at the hearing his wife handles the bills, this is not because he is unable to do so but because she handled those matters when he was in the military.  Tr. 43.
[4] As noted in Section V.A., Plaintiff did complain about knee pain with extended driving.

is alert and oriented, with intact concentration, good judgment, an appropriate fund of knowledge, and no detectable problems with memory. Tr. 495, 500. Also, although the ALJ disagreed with the state agency consultants' determinations, both Dr. Willens and Dr. Alvarez-Mullin determined Plaintiff's mental impairments were non-severe. Tr. 24; Tr. 68-69, 86-88. Finally, Dr. Reese noted in his October 2020 consultative examination that Plaintiff "can understand simple oral instructions and communicate simple information." Tr. 392. Dr. Reese also noted Plaintiff has "excellent mental status." Tr. 393. Given the evidence in the record, *Richter* does not undermine the ALJ's decision.

## VI.    CONCLUSION

For the reasons set forth above, the undersigned finds the ALJ's disability determination was supported by substantial evidence and recommends the decision be AFFIRMED.

Thus, it is respectfully RECOMMENDED:

1.    That Plaintiff's motion for summary judgment, ECF Doc. 16, be DENIED.

2.    That the decision of the Commissioner be AFFIRMED, and Mack's application for disability insurance benefits be DENIED.

3.    That the clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 22nd day of September 2022.

*s/ Hope Thai Cannon*
_____
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed **within fourteen (14) days** of the date of this Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.